IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REBECCA C.,[1]

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 2:23-cv-01235-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Rebecca C. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act. The Court has jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATIONS

Plaintiff was born in September 1983, making her thirty-four years old on February 2, 2018, her alleged disability onset date.[2] (Tr. 74, 993.) Plaintiff alleges disability due to anxiety,

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or

post-traumatic stress disorder ("PTSD") with panic attacks, migraines, bulging discs in her cervical spine, and bilateral tingling in her hands and feet. (Tr. 75, 254-61.)

Plaintiff initially filed her applications in February 2018. After the Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1058-60.) Plaintiff sought judicial review of the Commissioner's decision. (Tr. 1064-65.) On March 22, 2022, the Court reversed and remanded so that the ALJ could reevaluate Plaintiff's symptom testimony and lay witness testimony. (Tr. 1066-87.)

On remand, the ALJ held an administrative hearing on February 13, 2023, at which Plaintiff, her attorney, and a vocational expert ("VE") appeared via telephone and testified. (Tr. 1005-29.) On April 27, 2023, the ALJ issued another written decision denying Plaintiff's applications. (Tr. 976-95.) Plaintiff now seeks judicial review of the ALJ's 2023 decision.

## II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

---

'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of September 30, 2018 (Tr. 977) reflects the date on which her insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before September 30, 2018, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec. Admin.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 976-95.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 2, 2018, the alleged onset date. (*Id.* at 978.) At step two, the ALJ found that Plaintiff suffered from the following severe, medically determinable impairments: methamphetamine abuse disorder, PTSD with paranoid features, migraines, cervical degenerative disc disease, and hand numbness consistent with carpal tunnel syndrome. (*Id*. at 979.)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id*. at 981.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work" except she "needs a sit/stand

option, meaning she must be allowed to change position from standing to sitting and vice versa approximately every [thirty] minutes for about five minutes but staying at the work station." (*Id.* at 984.) The ALJ also found that Plaintiff could "never climb ladders, ropes or scaffolds" but that she could "frequently handle and finger bilaterally." (*Id.*) The ALJ concluded that Plaintiff needs to "avoid unprotected heights and exposure to bright sunshine or flashing lights, although computer monitors are okay"; "[s]he is limited to low-stress work, meaning no production pace, conveyor belt work, (non-worker controlled pace) in a predictable work environment"; and "[s]ocial functioning is limited to no more than brief and superficial interaction with the public, coworkers, and supervisors, although interaction with supervisors may increase to occasional when necessary for training." (*Id.*)

At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (*Id.* at 993.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a router, marker, and routing clerk. (*Id.* at 994.)

**DISCUSSION**

In this appeal, Plaintiff argues that the ALJ erred by failing to (i) provide specific, clear, and convincing reasons to discount Plaintiff's symptom testimony (Pl.'s Opening Br. ("Pl.'s Br.") at 5-7, ECF No. 12); and (ii) provide germane reasons to discount the lay witness testimony of Cadie H., Plaintiff's friend. (*Id.* at 7-8.)

As explained below, the Court concludes that the ALJ's decision is free of harmful legal error and supported by substantial evidence. The Court therefore affirms the Commissioner's decision.

///

///

# I. PLAINTIFF'S SYMPTOM TESTIMONY

## A. Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

## B. Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 984, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms.") The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

### 1. Specificity

Plaintiff first argues that the ALJ erred by failing to "link evidence to specific testimony" and instead "relied on generalities" to discount her testimony. (Pl.'s Br. at 5, citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).)

Plaintiff is correct that Ninth Circuit case law "requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified and first quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); and then citing *Brown-Hunter*, 806 F.3d at 493); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that general findings are insufficient because the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints," and concluding that the ALJ's findings were "insufficient to meet 'our requirements of specificity'") (simplified). That does not mean that an ALJ must "perform a line-by-line exegesis of the claimant's testimony," or "draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. But Ninth Circuit precedent "plainly requires" that an ALJ do more than "offer[] non-specific conclusions that [the claimant]'s testimony [is] inconsistent with her medical treatment." *Id.* (citations omitted).

In *Lambert*, the Ninth Circuit addressed the ALJ's use of "boilerplate" language and found that the "ALJ never identified which testimony she found credible, and never explained which evidence contradicted that testimony." *Id.* (simplified). Here, in contrast, the ALJ specifically acknowledged Plaintiff's symptom testimony regarding her headaches, neck and back pain, and mental health symptoms, and found that "[t]he objective medical evidence and [Plaintiff]'s treatment history are not entirely consistent with the allegations of the severity of physical and mental functional limitations." (Tr. 985.) In support of discounting Plaintiff's symptom testimony, the ALJ cited specific medical evidence from the relevant period and did not merely summarize the record. (*See id.* at 985-89.)

///

First, the ALJ acknowledged Plaintiff's testimony regarding her "extreme limitation in standing, walking, sitting, and lifting[.]" (*Id*. at 985.) The ALJ then cited records of physical examinations finding that Plaintiff had "normal gait and station, full motor and grip strength, and grossly intact sensation and coordination" in her physical exams throughout 2018-2022. (*Id*.) Further, the ALJ addressed Plaintiff's reports of "constant pain of a burning nature that is aggravated with bending and twisting" related to her cervical spine, such that she was "prescribed Tramadol for pain, as well as a muscle relaxer and a non-steroidal anti-inflammatory medication." (*Id*., citing Tr. 690, 696, 1346.) The ALJ also noted that Plaintiff received magnetic resonance imaging in March 2018 that "showed a disc bulge at C4-C5 with mild central stenosis but no foraminal narrowing, a disc bulge at C5-C6 with mild to moderate central and bilateral foraminal stenosis and uncovertebral hypertrophy, and a mild disc bulge at C6-C7 with mild central stenosis." (*Id*., citing Tr. 742.) The ALJ pointed out, however, that "[Plaintiff] told care providers in April 2018 that treatment provides moderate relief and that her symptoms were gradually improving" (*id*., citing Tr. 722)—which Plaintiff does not dispute.

Next, the ALJ acknowledged Plaintiff's allegations regarding her "ongoing neck pain and headaches [that she experiences] three to five days per week." (*Id*. at 986, citing Tr. 837.) The ALJ cited specific medical records that were inconsistent with Plaintiff's symptom testimony (*id*. at 986-88), and did not merely provide "summar[ies of] some of the medical evidence" as Plaintiff contends. (Pl.'s Br. at 6.) For example, with respect to Plaintiff's migraines, the ALJ noted that Plaintiff reported to her neurologist, Dr. Lim, in March 2020, that "[she] is responding well with Botox injection in combination with sumatriptan to abort her headaches" and "[s]ince starting her Botox injections, headaches are decreased to 2-3 times per week instead of 4-5 times per week[.]" (*Id*. at 987, citing Tr. 1370.) In addition, the ALJ cited the following evidence from

the relevant period: in July 2020, Plaintiff reported "good headache relief after having a Botox injection in March 2020 along with her other medications" and despite having a migraine during the physical exam, the results revealed Plaintiff's "alert appearance without acute distress, as well as normal postural, steady gait, intact coordination, and no visual disturbances." (*Id*., citing Tr. 1384-85.) The ALJ also noted that in March 2022, Plaintiff reported worsening headaches to her neurologist, and that her medications were adjusted. (*Id*., citing Tr. 1423). The ALJ then found that at a follow-up appointment in April 2022, Plaintiff told her providers that "her migraines are usually under control with medication." (*Id*., citing Tr. 1921.) The ALJ also noted that in August 2022, after engaging in physical therapy, Plaintiff told care providers that "she was having less intense, shorter, and less frequent headaches since starting physical therapy." (*Id*., citing Tr. 1894.)

Finally, the ALJ addressed Plaintiff's allegation "that she has very bad anxiety that makes it hard to work with other people and often has panic attacks" and that she "struggles in her head []dealing with people for long periods of time and does better in her home in her comfort zone." (*Id*. at 988, citing Tr. 254, 1021.) The ALJ considered Plaintiff's medical treatment records from the relevant period and found that they, paired with Plaintiff's activities of daily living, generally indicate that "although [Plaintiff] can get anxious at times in public, she was managing her symptoms well." (*See* Tr. 989, citing specific medical records from 2018 through 2022.)

In sum, this is a not a case in which the ALJ "never identified *which* testimony she found not credible, and never explained which evidence contradicted that testimony." *Lambert*, 980 F.3d at 1266 (simplified). As noted above, the ALJ specifically addressed Plaintiff's complaints of debilitating neck and back pain, as well as her mental health symptoms (*see* Tr. 985-90), and cited specific medical records from the relevant period that appeared to be inconsistent with

Plaintiff's allegations of disabling symptoms. (*See id.*) The ALJ therefore met the Ninth Circuit's specificity requirements. *Cf. Treichler*, 775 F.3d at 1103 (noting that an "ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints" and finding that an "ALJ's vague allegation that a claimant's testimony is not consistent with the . . . medical evidence, without any specific findings in support of that conclusion is insufficient for our review") (simplified).

**2. Clear and Convincing Reasons**

Plaintiff also argues that the ALJ's "decision does not appear to contain a single link between evidence and specified testimony[,]" and therefore "no clear and convincing reasons were offered for rejecting [P]laintiff's credibility." (Pl.'s Br. at 7.) The Court disagrees and finds that the ALJ appropriately discounted Plaintiff's symptom testimony based on the objective medical record (including improvement with treatment) and Plaintiff's daily activities, and therefore provided "specific, clear and convincing reasons for the rejection." *Ghanim*, 763 F.3d at 1163 (simplified).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (first citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); then citing *Lingenfelter*, 504 F.3d at 1040; and then citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

///

///

**a. Objective Medical Evidence**

As discussed above, the ALJ discounted the severity of Plaintiff's alleged symptoms based on objective medical evidence in the record. *See Young v. Saul*, 845 F. App'x 518, 520 (9th Cir. 2021) ("An ALJ may consider inconsistency between a claimant's symptom testimony and the objective medical evidence in the record in determining whether to discount the claimant's symptom testimony." (first citing 20 C.F.R. § 404.1529(c)(1)-(2); and then citing *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012))).

Plaintiff argues that after the ALJ "summariz[ed] some of the medical evidence[,]" he "concluded that it did not support the 'allegations of extreme limitations'" and such an explanation fails to comply with this Court's prior remand opinion. (Pl.'s Br. at 6; *see also* Tr. 1066-87.) Further, Plaintiff asserts that her "migraine disorder is incredibly well-documented" and that the ALJ "did not make a contrary finding." (*Id.*) Finally, Plaintiff argues that the ALJ "acted erroneously as his own medical expert in deciding to place more reliance on mental status exams than other evidence of profound mental health impairment."[3] (Pl.'s Br. at 6-7.)

The ALJ provided clear and convincing reasons supported by substantial evidence for discounting the alleged severity of Plaintiff's migraines and mental health symptoms based on inconsistencies with the objective medical record. *See Metcalf v. Berryhill*, No. 316CV05432RSLJRC, 2017 WL 2270254, at *3 (W.D. Wash. Apr. 14, 2017) ("Based on the

[3] In her eight-page opening brief, Plaintiff challenged only the objective medical evidence related to her migraines and mental health impairments, the ALJ's evaluation of her activities of daily living, and the lay witness testimony. Plaintiff did not challenge the ALJ's other grounds for discounting Plaintiff's symptom testimony, such as the objective medical evidence related to her back and neck pain or her improvement with treatment, and therefore she waived those arguments. *See, e.g.*, *Garza v. Kijakazi*, 857 F. App'x 280, 281 (9th Cir. 2021) (explaining that the claimant "waived any challenge to the ALJ's determination that her testimony was not entirely credible and to the ALJ's evaluation of the medical opinion evidence by failing to raise them in her opening brief") (citation omitted).

record as a whole, the Court concludes that the ALJ provided clear and convincing reasons for his failure to credit fully the plaintiff's testimony regarding her limitations based on inconsistencies contained in plaintiff's medical records."), *report and recommendation adopted*, 2017 WL 2256892 (W.D. Wash. May 23, 2017).

Addressing Plaintiff's migraines, the ALJ acknowledged Plaintiff's testimony that "she struggles with migraines despite getting Botox injections and has also tried additional treatment modalities." (Tr. 985, citing Tr. 1017-19.) Despite Plaintiff's assertion that the ALJ failed to link specific testimony to any objective evidence, the ALJ found that "the treatment notes demonstrating good control of headaches with treatment are inconsistent with [Plaintiff]'s allegations of disabling headaches." (*Id.*, citing Tr. 943, 949, 1312, 1370, 1416, 1432.) In further support, the ALJ cited several inconsistencies between what Plaintiff reported to her providers and her hearing testimony. For example, the ALJ cited an August 2021 treatment note reflecting that Plaintiff told her providers that "a Botox injection in June 2021 provided good relief of headache symptoms for 10 to 11 weeks." (*Id.* at 987, citing Tr. 1411.) At Plaintiff's follow-up visit in December 2021, Plaintiff again told her neurologist that "she was only having headaches two days per week and that they typically last only three hours and that recent Botox injections provided good relief." (*Id.*, citing Tr. 1415-16.) In March 2022, Plaintiff reported to her providers that her migraines were worsening and her providers adjusted her medication and stated that she was a "good candidate to address headache and neck pain with physical therapy." (*Id.*, citing Tr. 1923.) By August 2022, Plaintiff reported that "she was having less intense, shorter, and less frequent headaches since starting physical therapy." (*Id.*, citing Tr. 1894.) The ALJ then explained that the objective medical evidence was inconsistent with Plaintiff's allegations of extreme limitations in standing, walking, sitting, lifting, and disabling pain:

> These findings generally demonstrating normal gait and strength, intact sensation and coordination, and good control of headaches with treatment are inconsistent with [Plaintiff]'s allegations of extreme limitations in standing, walking, sitting, and lifting and disabling pain.
>
> . . .
>
> [Plaintiff]'s migraine impairment further imposes the need to avoid bright sunshine and flashing lights. However, these impairments do not preclude [Plaintiff] from performing a limited range of light work[.]

(*Id*. at 987-88.)

With respect to her PTSD symptoms and anxiety, Plaintiff argues that the ALJ "acted erroneously as his own medical expert in deciding to place more reliance on mental status exams than other evidence of profound mental health impairment." (Pl.'s Br. at 6-7.) Plaintiff asserts that the ALJ never specified which testimony he was undermining in reliance on the mental status exams. (*Id*., citing *Brown-Hunter*, 806 F.3d at 494.) On the contrary, the ALJ specifically identified several inconsistencies between Plaintiff's hearing testimony and her mental status exams, provider observations, and conservative treatment:

> Further, mental status exams during other medical care visits on occasion showed an anxious affect but also generally showed unremarkable findings as well, including normal mood and affect, alert and fully oriented cognition, normal speech and behavior, normal thought content, and normal judgment. Moreover, the record does not indicate that [Plaintiff] sought emergency or inpatient psychiatric treatment. Nonetheless, [Plaintiff]'s mental impairments are accounted for in the limitation to low-stress work with typically no more than brief and superficial interaction with the public, coworkers, and supervisors, as found in the residual functional capacity. However, greater mental limitations are not warranted by the generally mild mental status exam findings and routine mental health treatment in the record.

(*Id.* at 989) (simplified); *see Stein v. O'Malley*, No. 23-16115, 2024 WL 3581189, at *2 (9th Cir. July 30, 2024) (holding that the ALJ appropriately discounted the claimant's testimony about her "brain fog and inability to focus" because the alleged severity of those symptoms was "inconsistent with the fact that her mental health treatment plan was not especially aggressive"

(*citing* 20 C.F.R. § 404.1529(c)(3)(v))). The ALJ acknowledged that some of Plaintiff's psychotherapy appointments demonstrated her "anxious mood, agitated affect, paranoid and overwhelmed attitude[,]" but the ALJ also noted that several mental health status exams reflected Plaintiff's "euthymic mood and affect, cooperative attitude, appropriate dress, adequate grooming, fair to good eye contact, good attention, normal speech and language, fully oriented cognition, linear and logical thought process, normal memory and intellectual functioning, and fair insight and judgment." (*Id.* at 988, citing psychotherapy treatment notes from 2018 through 2022.) The ALJ discussed that Plaintiff's providers adjusted her medication regimen, and in June 2019, Plaintiff reported that her "medication was helpful for controlling nightmares and her mental health was improving." (*Id.*, citing Tr. 870, 872.) The ALJ further observed that Plaintiff "told care providers in late 2019 and early 2020 that she was feeling better after her psychotropic medications were adjusted following a period of depression and that she was feeling better overall." (*Id.*, citing Tr. 888, 892, 1470, 1483, 1487.)

The Court concludes that the inconsistencies between Plaintiff's alleged symptoms and the objective medical evidence in the record, including conservative treatment, was a clear and convincing reason to discount her testimony and was supported by substantial evidence.

**b. Activities of Daily Living**

The ALJ also discounted Plaintiff's symptom testimony based on inconsistencies between Plaintiff's reported daily activities and her alleged inability to work. (Tr. 989-90.) In discounting Plaintiff's testimony, the ALJ considered Plaintiff's ability to care for her household with three children "by herself, including a new baby" with only some help from a neighbor and her older children. (*Id.* at 989, citing Tr. 1011-13.) The ALJ also noted that Plaintiff had no problem driving, completing personal care activities, making dinner daily, cleaning her home and doing laundry, shopping, paying bills, counting change, handling a savings account, and

regularly taking her children to the park and socializing at friends' homes. (*Id*., citing Tr. 254-61.)

The ALJ also found Plaintiff's activities related to a job she began in December 2018 to be at odds with her testimony, finding that the job "involv[ed] heavy lifting" and she stopped working not due to "physical or mental conditions[,]" but because of a failed background check. (*Id*., citing Tr. 1347, 1353.) The ALJ further noted that Plaintiff reported during the relevant time period that she was working for a caterer, was unable to work because of a lack of childcare, and was interested in working but preferred to be a stay-at-home mom:

> [Plaintiff] told care providers in April 2019 that she was working for a caterer and told care providers in August 2020 that although she had was interested in working, she was unable to work at the time because of lack of childcare, rather than her physical or mental conditions. Vocational rehabilitation records from November 2020 also state that although the claimant was interested in working, she preferred to be a stay-at-home mom after having her third child. [Plaintiff] also told care providers in June 2022 that she had started running on the track.

(*Id*. at 989-90) (simplified).

Plaintiff argues that the ALJ "failed to make findings concerning the nature, extent, frequency, and duration of the activities" and that the ALJ "failed to determine whether the activities were performed [during] a substantial part of [her] day and whether they had workplace transferability." (Pl.'s Br. at 6.) However, although "transferability of daily activities to the work setting is a valid reason to discredit [a p]laintiff's testimony . . . it is equally reasonable for [an] ALJ to rely on the extent that a [p]laintiff's daily activities 'contradict claims of a totally debilitating impairment.'" *Cook v. Comm'r Soc. Sec. Admin.*, No. 2:16-cv-00061-FVS, 2017 WL 1479430, at *6 (E.D. Wash. Mar. 29, 2017) (citing *Molina*, 674 F.3d at 1113)), *report and recommendation adopted*, 2017 WL 1455008 (E.D. Wash. Apr. 21, 2017). It was therefore appropriate for the ALJ to discount Plaintiff's symptom testimony based on Plaintiff's daily

activities that contradicted her claims of total disability. (*See* Tr. 985, 989.) In any event, Plaintiff mischaracterizes the ALJ's statements, as the ALJ also correlated Plaintiff's activities of daily living to workplace transferability:

> These activities require an ability to stand and walk for short stretches, lift and carry light items, complete familiar mental tasks at an unhurried pace, and handle some limited social interaction. Thus, a limitation to light work with a sit/stand option in a low-stress setting with typically no more than brief and superficial social interaction additional climbing, handling, fingering, and workplace environmental limitations adequately accounts for the claimant's reported range of physical and mental limitations.

(*Id*. at 990.)

The Court further finds that it was appropriate for the ALJ to consider Plaintiff's work activities, as "an ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). The ALJ also properly considered Plaintiff's reports that she was not working because she preferred to be a stay-at-home mom, as a "basic program principle is that a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work." Social Security Ruling 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982); *see also Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (holding that the ALJ appropriately discounted the claimant's symptom testimony because, *inter alia*, "[the claimant] stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-67 (9th Cir. 2001) (finding that the ALJ properly discounted a claimant's testimony due to evidence of self-limitation and lack of motivation to work); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that the ALJ properly found that the claimant's poor work history and lack of propensity to work

in the claimant's lifetime was inconsistent with her alleged inability because of disabling limitations).

For these reasons, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence" for doing so).

## II. LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ erred by discounting the lay witness testimony provided by her friend, Cadie H. (Pl.'s Br. at 7-8.) Specifically, she asserts that it was insufficient for the ALJ to discount the lay testimony on the ground that it is inconsistent with objective medical evidence. (*Id.*)

### A. Applicable Law

The new regulations "provid[e] that an ALJ is 'not required to *articulate* how [he] considered evidence from nonmedical sources[.]'" *Stephens v. Kijakazi*, No. 22-35998, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023) (emphasis added) (quoting 20 C.F.R. §§ 404.1520c(d), 416.920c(d)). The Ninth Circuit recently held that an "ALJ did not err in discounting the lay witness statement . . . without articulating germane reasons" because "under the revised regulations applicable to this claim, the ALJ is 'not required to articulate how [he] considered evidence from nonmedical sources.'"[4] *Trogdon v. O'Malley*, No. 22-16461, 2024 WL 3949081,

[4] The Court notes that the "majority of district courts in this circuit," including this Court, have "conclude[d] that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony." *Tracy Q. v. Kijakazi*, No. 6:22-cv-00692-SI, 2024 WL 706963, at *7 (D. Or. Feb. 21, 2024) (citing, *inter alia*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, No. 6:22-cv-01378-SB, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023) and *Joseph L. S. v. Kijakazi*, No. 5:23-cv-00006, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023)).

at *1 (9th Cir. Aug. 27, 2024) (quoting 20 C.F.R. § 404.1520c(d)). However, the Ninth Circuit went on to find that "even if the requirement that the ALJ provide germane reasons for discounting lay witness testimony still applies, any error was harmless." *Id.* (citations omitted); *see also Kennedy v. O'Malley*, No. 22-35866, 2024 WL 242992, at *1-2 (9th Cir. Jan. 23, 2024) (finding that "[t]he ALJ did not articulate how he evaluated the statement of a Social Security Administration employee" and noting that "an ALJ is 'not required to articulate how [she] considered evidence from nonmedical sources' under the new regulations" (quoting 20 C.F.R. §§ 404.1520c(d), 416.920c(d))).

**B. Analysis**

In light of the Ninth Circuit's most recent guidance, the Court finds that the ALJ was not required to articulate his evaluation of the lay witness testimony. *See Trogdon*, 2024 WL 3949081, at *1. However, in an abundance of caution, the Court further finds that if the ALJ was required to articulate germane reasons for discounting Cadie H.'s statements, he satisfied that standard here.

The ALJ discounted Cadie H.'s statements on the ground that they were "inconsistent with the objective medical record," including "the physical exams demonstrating normal gait and station, full motor and grip strength, and grossly intact sensation; the treatment notes demonstrating good control of headaches with treatment; including the generally mild mental status exam findings and routine mental health treatment in the record, as well as the treatment notes demonstrating adequate control of mental health symptoms with treatment." (Tr. 992, citing several specific treatment notes from 2018 through 2022.)

Plaintiff argues that a "lack of support from medical records is not a germane reason to give 'little weight'" to lay witness testimony. (Pl.'s Br. at 7-8, quoting *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).) However, Plaintiff "mistakes inconsistency (an acceptable

'germane reason') for lack of support, (which is not)." *Tonyia P.*, 2024 WL 36713, at *2. "The Ninth Circuit has clarified that generalized conclusions that lay witness testimony lacks support from the overall medical evidence is not a proper basis for disregarding it." *Id.* (simplified and quoting *Diedrich*, 874 F.3d at 640). However, "[i]nconsistency with the medical record is." *Id.* (citations omitted); *see also Campbell v. Saul*, 848 F. App'x 718, 722 (9th Cir. 2021) ("Here, the ALJ rejected the lay witness testimony in part because it was 'not consistent with the preponderance of the objective medical evidence[.]' This is a germane reason for rejecting the testimony."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason." (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001))). Here, "[s]ince the ALJ relied on several inconsistencies with the medical record, not a generalized 'lack of support,' the ALJ did not err." *Tonyia P.*, 2024 WL 36713, at *2.

In any event, Cadie H.'s statements were substantially similar to Plaintiff's testimony regarding her physical and mental limitations. (*Compare* Tr. 263-79 *with* Tr. 254-61.) Cadie H. reported that Plaintiff's "anxiety causes her to avoid the public" and that it "makes concentration very difficult" and "remembering simple things is a strain." (Tr. 263, 268.) Similarly, Plaintiff testified that she has "a hard time focusing and concentrating" and her anxiety makes it "hard for [her] to work well with others." (Tr. 254, 259.) Thus, even if the ALJ erred in evaluating the lay witness testimony here, the ALJ's clear and convincing reasons for discounting Plaintiff's testimony also apply to the lay testimony and any error was harmless. *See De Mello v. Kijakazi*, No. 22-35111, 2022 WL 17583054, at *1 (9th Cir. Dec. 12, 2022) ("[A]ny claimed error was harmless because, given the similarity between [the lay witness's] report and [the claimant's] testimony, the lay testimony did not alter the ultimate nondisability determination.") (simplified);

*Jacob v. Berryhill*, 756 F. App'x 709, 711-12 (9th Cir. 2018) (noting that the ALJ provided clear and convincing reasons for discounting the claimant's testimony, which "overlap[ped] substantially with that of [the lay witness]," and holding that "any error was harmless" in discounting the lay witness testimony because the ALJ's reasons for rejecting the claimant's testimony applied with equal force to the lay witness).

**CONCLUSION**

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and is supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 14th day of January, 2025.

Stacie F. Beckerman

HON. STACIE F. BECKERMAN
United States Magistrate Judge